ORDER (Remanding)
TODD R. MATHA, Chief Judge.
INTRODUCTION
On August 4, 2008, the Ho-Chunk Nation Supreme Court (hereinafter Supreme Court) reversed and remanded a decision that this Court rendered in an administrative review action. The Supreme Court instructed the Court to conduct further proceedings, which the Court deemed inappropriate since it does not exercise the role of fact-finder in such matters. The following discussion covers the relevant le *257 gal issues necessary to appropriately render a decision on remand.
PROCEDURAL HISTORY
The Supreme Court remanded the instant case for proceedings consistent with the appellate decision. Gale S. White v. Jean Ann Day, SU 08-02 (HCN S.Ct., Aug. 4, 2008) (hereinafter Decision) at 7-8. Shortly thereafter, the Court directed judicial administrative staff to acquire a digital recording of the May 15, 2007 Grievance Review Board (hereinafter GRB) hearing, which the GRB delivered on September 9, 2008. The Court enters this decision in a timely manner pursuant to In the Matter of Timely Issuance of Decisions, Admin. Rule 04-09-05(1) (HCN S.Ct., Apr. 9, 2005).
APPLICABLE LAW
CONSTITUTION OF THE HO-CHUNK NATION
Art. Ill-Organization of the Government
Sec. 3. Separation of Functions. No branch of the government shall exercise the powers and functions delegated to another branch.
Art. IV-General Council
Sec. 2. Delegation of Authority. The General Council hereby authorizes the legislative branch to make laws and appropriate funds in accordance with Article V. The General Council hereby authorizes the executive branch to enforce the laws and administer funds in accordance with Article VI. The General Council hereby authorizes the judicial branch to interpret and apply the laws and Constitution of the Nation in accordance with Article VII.
A-t. V-Legislature
Sec. 2. Powers of the Legislature. The Legislature shall have the power:
(a) To make laws, including codes, ordinances, resolutions, and statutes;
(b) To establish Executive Departments, and to delegate legislative powers to the Executive branch to be administered by such Departments, in accordance with the law; any Department established by the Legislature shall be administered by the Executive; the Legislature reserves the power to review any action taken by virtue of such delegated power;
(f) To set the salaries, terms and conditions of employment for all governmental personnel;
Art. VI-Executive
Sec. 1. Composition of the Executive.
(b) The Executive Branch shall be composed of any administrative Departments created by the Legislature, including a Department of the Treasury, Justice, Administration, Housing. Business, Health and Social Services, Education, Labor, and Personnel, and other Departments deemed necessary by the Legislature. Each Department shall include an Executive Director, a Board of Directors, and necessary employees. The Executive Director of the Department of Justice shall be called the Attorney General of the Ho-Chunk Nation. The Executive Director of the Department of Treasury shall be called the Treasurer of the Ho-Chunk Nation.
Art. VII-Judiciary
Sec. 5. Jurisdict ion of the Judiciary.
(a) The Trial Court shall have original jurisdiction over all cases and controversies, both criminal and civil, in law or in equity, arising under the Constitution, laws, customs and traditions of the Ho-Chunk Nation, including cases in which the Ho-Chunk Nation, or its officials and employees, shall be a party. Any such case or controversy arising within the jurisdiction of the Ho-Chunk Nation shall be filed *258 in Trial Court before it is filed in any other court. This grant of jurisdiction by the General Council shall not be construed to be a waiver of the Nation’s sovereign immunity.
Sec. 6. Pcnvers of the Tribal Court.
(a) The Trial Court shall have the power to make findings of fact and conclusions of law. The Trial Court shall have the power to issue all remedies in law and in equity including injunctive and declaratory relief and all writs including attachment and mandamus.
Sec. 7. Powers of the Supreme Court,
(a) The Supreme Court shall have the power to interpret the Constitution and laws of the Ho-Chunk Nation and to make conclusions of law. The Supreme Court shall not have the power to make findings of fact except as provided by enactment of the Legislature.
(b) The Supreme Court shall have the power to establish written rules for the Judiciary, including qualifications to practice before the Ho-Chunk courts, provided such rules are consistent with the laws of the Ho-Chunk Nation.
Sec. 14. Right to Appeal. Any party to a civil action, or a defendant in a criminal action, who is dissatisfied with the judgment or verdict may appeal to the Supreme Court. All appeals before the Supreme Court shall be heard by the full Court.
Art. X—Bill of Rights
Sec. 1. Bill of Rights.
(a) The Ho-Chunk Nation, in exercising its powers of self-government, shall not:
(8) deny to any person within its jurisdiction the equal protection of its laws or deprive any person of liberty or property without the due process of law;
Art. XII-Sovereign Immunity
Sec. 1. Immunity of Nat io n from Suit. The Ho-Chunk Nation shall be immune from suit except to the extent that the Legislature expressly waives its sovereign immunity, and officials and employees of the Ho-Chunk Nation acting within the scope of their duties or authority shall be immune from suit.
STATUTE OF LIMITATIONS & COMMENCEMENT OF CLAIMS ACT, 2 HCC § 14
Subsec. 4. Civil Action and Time Limitation. Civil actions may be commenced only within the periods as prescribed here:
e. All employment actions must be filed in the Trial Court within 30 calendar days of the final administrative grievance review decision by the Grievance Review Board.
EMPLOYMENT RELATIONS ACT OF 2004, 6 HCC § 5
Ch. I-General Provisions
Subsec. 3. Declaration of Policy.
a. This Employment Relations Act is the official employment law of the Ho-Chunk Nation. It supersedes the Nation’s Personnel Policies and Procedures Manual and all policies, rules, and regulations enacted by Legislative resolutions pertaining to the employment law of the Nation.
Subsec. 5. Employment Clause,
a. Equal Employment Opportunity. With the exception of Ho-Chunk preference in Employment as set forth in paragraph (b), below, it will be a violation of this Act to discriminate on an individual’s sex, race, religion, national origin, pregnancy, age, marital status, sexual orientation, or disability.
Subsec. 6. Employee Rights.
d. Harassment.
*259 (1) Harassment (both overt and subtle) is a form of employee misconduct that both demeans another person and undermines the integrity of the employment relationship by creating an unreasonably intimidating, hostile, and objectively offensive working environment.
Ch. IV-Employee Benefits
Subsec. 27. Unpaid Leave of Absence. An employee with more than twelve (12) months of continuous services [sic ] full time service may be eligible for an Unpaid Leave of Absence for a period not to exceed three (3) months. All requests must be approved by the Department of Personnel.
a. An Unpaid Leave of Absence may be granted for the following reasons:
(1) Continued illness or personal reasons, which extend in time beyond available annual, sick, or FML. During an Unpaid Leave of Absence for medical reasons, health benefits will continue for up to ninety (90) days;
(2) Advanced training, higher education, or research, which will increase employability and job skills that are in the best interests of the Ho-Chunk Nation. Employees will be responsible for maintaining or discontinuing any employment related discretionary insurance benefits with the Nation.
Ch. V-Work Rules & Employee Conduct, Discipline, & Administrative Review
Subsec. 29. General Hours of Work and Attendance.
e. Abandonment of Employment. An employee who is absent from his or her assigned work location without authorized leave for three (3) consecutive days or five (5) days in a twelve (12) month period shall be considered absent without authorized leave, and as having abandoned his or her employment. The employee shall be automatically terminated, unless the employee can provide the Nation with acceptable and verifiable evidence of extenuating circumstances justifying the absence(s).
Subsec. 30. Employee Conduct.
e. The following employee acts, activities, or behavior that are unacceptable conduct.
(1) Improper or unauthorized use of paid or unpaid leave.
(2) Being absent without authorized leave or repeated unauthorized late arrival or early departure from work.
Subsec. 31. Employee Discipline.
a. Depending on the nature of the circumstances of an incident, discipline will normally be progressive and should bear a reasonable relationship to the violation. Based on the severity of the employee conduct, progressive discipline may not be applicable. Supervisors imposing discipline shall afford Due Process to the employee prior to suspending or terminating any employee. Types of discipline include:
(2) Termination.
Subsec. 33. Grievances.
a. Employees may seek administrative and judicial review only for alleged discrimination and harassment.
Subsec. 34. Administrative Review Process.
a. Policy.
(1) The Department of Personnel will take all reasonable steps to investigate any incident, which has resulted in disciplinary action. It is the policy of the Ho-Chunk Nation to afford all eligible employees who have been subject to suspension or termination a means of having the circumstances of such disciplinary action reviewed by an impartial and *260 objective Grievance Review Board (Board).
e. Witnesses and Evidence.
(1) Ten (10) days prior to the hearing, the employee and supervisor shall each provide the Department of Personnel with a list of all witnesses they intend to call at the hearing. They shall also present copies of any documentary evidence that they would like to submit to the Board.
(2) Both parties may amend or supplement their original witness list and/or submit additional documentary evidence within five (5) days after receiving the other party’s list of witnesses and evidence.
(3) Time limitations. Failure to abide by any of the above time requirements will prohibit the non-compliant party from introducing documentary evidence or presenting witnesses to the Board. For the purposes of this section, “days” shall be calculated using business days. Exceptions to any of the above time frames must be approved by the Executive Director, Department of Personnel.
f. Hearing Procedure.
(4)Questions.
(b) The Board members may ask questions of either party and may call for any additional information as they deem necessary in reaching a decision. If it requires information that is not readily available, the Board may accept into the record such additional information or choose to suspend the meeting and reconvene when the information is available.
g. Proceedings of the Board. At the commencement of a hearing before the Grievance Board of Review [sic ], the Department of Personnel will discuss with the Board their responsibilities and obligations including, but not limited to, the following:
(3) The Board may ask questions of either party and request additional evidence at any time.
(4) The Board may instruct the parties that it has heard sufficient information to make a recommendation, or that the information being offered is not relevant. Aside from relevancy issues, formal rules of evidence do not apply. The Board has the authority to extend/waive time limitations if it believes that the information offered is relevant and probative of the issues presented as defined below.
(5) The Board shall be responsible to make all relevancy determinations throughout the meeting. In making these determinations, the Board shall consider whether the proposed evidence (either witness testimony or documentary evidence) relates to the disciplinary action and whether it will affect the Board’s recommendation. Only witnesses who have had direct involvement in the incident leading to the disciplinary action will be allowed to participate and all questions asked should directly relate to said disciplinary action.
(7) At the conclusion of the presentation of testimony and evidence, the Board will privately deliberate and make a decision within five (5) calendar days. No record of the Board’s deliberation will be made. The decision of the Board shall describe the facts of the case and determine whether the facts support a violation of the Employment Relations Act or applicable Unit Operating Rules.
Subsec. 35. Judicial Review.
a. Waiver of Sovereign Immunity. Pursuant to Article XII of the Constitution of the Ho-Chunk Nation, the Ho-Chunk Nation Legislature expressly waives the *261 sovereign immunity of the Ho-Chunk Nation in the limited manner described herein. This waiver shall be strictly construed.
c. Judicial review of a grievance involving suspension, termination, discrimination, or harassment may proceed to the Ho-Chunk Nation Trial Court only after the Administrative Review Process has been exhausted through the Grievance Review Board. An employee may appeal a Board decision to the Trial Court within thirty (30) calendar days of when the Board decision is served by mail.
e. Under this limited waiver of sovereign immunity, the Court shall review the Board’s decision based upon the record before the Board. Parties may request an opportunity to supplement the record in the Trial Court, either with evidence or statements of their position. The Trial Court shall not exercise de novo review of Board decisions. The Trial Court may only set aside or modify a Board decision if it was arbitrary or capricious.
HO-CHUNK NATION RULES OF CIVIL PROCEDURE
Rule 63. Judicial Review of Administrative Adjudication.
(A) Any person aggrieved by a final agency decision may request that the Ho-Chunk Nation Trial Court review such decision by filing a Petition for Administrative Review with the Court within thirty (30) calendar days of such decision, unless otherwise provided.
1. The following laws provide for filing within thirty (30) days:
a. Employment Relations Act of 2004
(B) The Petition for Administrative Review shall identify the petitioner making the request by name and address. The Petition for Administrative Review must also contain a concise statement of the basis for the review, i.e., reason or grounds for the appeal, including a request to supplement the evidentiary record pursuant to HCN R. Civ. P. 63(D)(l)(a-b), if applicable. The statement should include the complete procedural history of the proceedings below. The petitioner must attach a copy of the final administrative decision to the Petition for Administrative Review.
(D) The commission or board, designated as the respondent, must transmit the administrative record to the Court within fifteen (15) days after receipt of the Petition for Administrative Review. The administrative record shall constitute the sole evidentiary record for judicial review of the agency decision, unless the petitioner avails him or herself of the following exception:
1. The petitioner may request an opportunity to supplement the evidentiary record within an Employee Grievance Review Board appeal, provided that the petitioner demonstrates that the Board:
a. excluded relevant evidence as defined by the Federal Rules of Evidence, Rule 401; or
b. failed to consider evidence that could not reasonably have been discovered prior to the Employee Grievance Review Board hearing.
(E) Within thirty (30) calendar days of filing the Petition for Administrative Review, the petitioner shall file a written brief, an Initial Brief .... The respondent shall have thirty (30) calendar days after filing of the brief in which to file a Response Brief. After filing of respondent’s Response Brief, the petitioner may file the Reply Brief within ten (10) calendar days.
1. If the petitioner alleges one of the conditions stated in HCN R. Civ. P. 63(D)(l )(a-b), then the Court shall convene a hearing to determine whether to include supplemental evidence in the ad *262 ministrative record. The Court shall announce the briefing schedule, which shall resemble the schedule set forth in HCN R. Civ. P. 63(E), in a written decision after the hearing.
(H) The Court shall decide all cases upon the administrative record, briefs, memoranda and statements filed plus the oral argument, if heard.
(I) The Court shall not set aside or modify any agency decision, unless it finds that the decision was arbitrary and capricious, unsupported by substantial evidence or contrary to law, with the following exception:
1. The Employment Relations Act of 2004 mandates that the Court may only set aside or modify a Board decision if it was arbitrary and capricious.
HO-CHUNK NATION RULES OF APPELLATE PROCEDURE
Rule 9. Filing Fees and Costs.
a.The filing fee for an appeal shall be in accordance with the schedule of fees.
Rule 11. Time for Filing and Service of Notice of Appeal.
a. A written Notice of Appeal from a decision of the Trial Court must be filed with the Clerk of Court within sixty (60) calendar days of the date of the final judgment or order. The Notice of Appeal shall identify the party(ies) making the appeal by name and address, and shall identify the final judgment or order being appealed by name and case number.
b. The party filing the appeal must file a short statement of the reason or grounds for the appeal. The statement should include complete procedural and factual summary of the proceedings below.
c.Copies of the Notice of Appeal shall be served upon all parties to the action by the Appellant. Proof of Service shall be promptly filed with the Court.
DECISION
The Supreme Court variously directed this Court to: 1) explain the manner in which it assessed facts relating to the exhaustion of administrative remedies, Decision at 5 n. 4; 2) fine additional facts concerning the issue of exhaustion, “if necessary,” id.; 3) “engage in the necessary fact finding” to deduce whether the petitioner received pre-deprivation minimal procedural due process protection, id. at 7; 4) and conduct “further proceedings consistent with [its] opinion.” Id. at 8. The Supreme Court also disputed this Court’s decision to affirm the GRB action without employing the statutorily identified standard of review. Id. at 4-5. At first glance, the preceding direction may not appear all that daunting, but a resultant inquiry implicates several issues of a constitutional dimension. The Court shall separately address these issues, the resolution of which compels a remand to the administrative agency.
I. Does a petitioner maintain any obligation to identify the “reason or grounds” for her administrative appeal along with a continuing obligation to prosecute the same?
The petitioner, Gale S. White, filed her Petition for Administrative Review (herein after Petition) on July 13, 2007, choosing to utilize the Court’s available boilerplate pleading form. The petitioner “requested] review of the administrative decision based on January 18, 2007, Termination from HCN Social Services, as Domestic Abuse Advocate, 6 yrs.”[1] Pet. *263 at 1. She additionally summarized the incident and circumstances as follows: “January 18, 2007, Termination—Unable to resolve workplace problems, which affected my job performance, consistently having work hours deducted.” Id. at 2. As a consequence, the petitioner requested the following relief: “Financial Loss— Loss of last paycheck, Compensated $10,000.00 due to loss of job.” Id. at 3. Regardless of the lack of specificity within the petitioner’s statements, the Petition clearly reveals that the petitioner wished to dispute an alleged termination.
Yet, the final administrative decision that the petitioner attached to the initial pleading does not on its face deal with a separation from employment. See id. at 4; see also HCN R. Civ. P. 63(B) (requiring that “[t]he petitioner must attach a copy of the final administrative decision to the Petition for Administrative Review.”). The Introduction of the underlying decision instead asserts that the “[gjrievant claims harassment and discrimination.” In the Matter of: Gail White v. Jean Day, GRB-003-07-D/H (GRB, May 21, 2007) (hereinafter GRB Decision) at 1. The GRB case designation of “D/H” also indicates the type of case presented for administrative adjudication.
The GRB Decision continues by referencing the basis for the dispute: “Gail White, timely filed a Ho-Chunk Nation Grievance form on January 8, 2007, with the Ho-Chunk Nation’s Department of Personnel after an incident between her supervisor, Jean Day[,] and herself.” Id. However, in response to the petitioner’s discrimination claim, the GRB found that the “grievant was unable to show any actions by Supervisor Day that would support this claim,” and in relation to the harassment claim, the GRB adjudged that “the grievant failed to show Supervisor Day[’s] actions constituted] misconduct by creating an unreasonably intimidating hostile and objectively offensive w-orking environment.” Id. at 2. As a result, the GRB dismissed the discrimination claim outright since the petitioner failed to establish an offense against a member of a protected class and otherwise simply could “not find harassment.” Id. The GRB Decision contains little detail beyond that which is stated above, and, to reiterate, has nothing to do with an alleged termination.
The Court did not immediately react to the obvious disconnect between the Petition and GRB Decision by, for instance, dismissing the administrative appeal even though the petitioner articulated no “basis for the reviews” HCN R. Civ. P. 63(B). The petitioner quite possibly could not state the “reason or grounds for the appeal” due to the fact that she was appealing a nonexistent decision. Id. Nonetheless, the Court declined to reject the initial pleading in light of its long-standing practice of “liberally construing] the Petition filed by the pro se litigant.”[2] In the Interest of Adult CTF Beneficiary: Selina Idt- *264 tlewolf, DOB 01/29/84 v. HCN Office of Tribal Enrollment, CV 04-70 (HCN Tr. Ct., Aug. 3, 2004) at 4; see also Sherry Wilson v. HCN Dep’t of Pers., CV 05-43, 6 Am. Tribal Law 372, 379-82, 2006 WL 5891598, *8-10 (HCN Tr. Ct.2006). The Court instead decided to provide the petitioner three (3) further opportunities to enunciate the basis for her administrative appeal, i.e., initial brief and possible reply brief and oral argument. See Scheduling Order, CV 07-54 (HCN Tr. Ct., July 17, 2007) at 3.
The petitioner subsequently filed two (2) briefs, but neither party chose to request the ability to present oral argument. Id.; see also HCN R. Civ. P. 63(H). The petitioner also did not “request." to supplement the evidentiary record.” Pet. at 3 (citing HCN R. Civ. P. 63(D)(1)). The petitioner’s initial brief, entitled “Brief of Petition ” does not address the GRB Decision, but proceeds to solely dispute the alleged termination. The petitioner states upfront that she is “[Challenging termination [,] January 18, 2007—No due pro *265 cess.” Br. of Pet, CV 07-54 (Sept 10, 2007) at 1. In this regard, the petitioner later alleges that “[n]o due process to ever mediate this work environment I experienced.” Id. at 2. The petitioner concludes her initial brief by reiterating her request for relief: “Expunge termination from Personnel File[;] Leave in Good standing, $10,000.00 per violation, all unemployment compensation retro [to] January 18, 2007, which the HCN Personnel Department did not disbu te [sic ]. Financial loss, all back pay to date or resolution of this tribal hearing.” Id. at 3.
The petitioner’s optional reply brief, entitled “Petitioner’s Response,” largely continues in the same vein. However, within the Statement of Facts section, the petitioner does present her opinion that she suffered harassment and discrimination, but she does not describe the manner in which the GRB erred within its adjudication of these issues. Petitioner’s Resp, CV 07-54 (Oct. 18, 2007) at 1-2. The petitioner expresses a degree of confusion with the legal standards employed by the GRB,[3] but ultimately relents to its decision as detailed within this excerpt:
The Ho-Chunk Nation ERA definition of discrimination and harassment are defined different [sic ] than my understanding. Discrimination to me was unfair, favoritism, and intolerance. My definition of harassment is defined by irritation and annoyance at work and justifying time and attendance every week. I explained to [the] GRB and had to agree with the definition that [the] GRB explained to me what harassment or discriminated [sic ] against an employee who is disabled or elder [sic] meant per definition of the ERA.
As a pro se litigant, this is difficult to present the unfair treatment I received from this supervisor for the past eight (8) months and according to the HCN ERA interpretations or definitions.
Id. at 2.
The petitioner’s concession upon these claims, which she does not press further, becomes all the more apparent when reviewing the next three (3) sections of her reply brief. The petitioner enumerates three (3) legal claims within her Statement of Issues, all of which concern the alleged termination and failure to afford procedural due process. Id. The Argument section likewise focuses solely upon the petitioner’s separation from employment, id. at 3, and the Conclusion sets forth a request for relief similar to that contained in the Petition and Brief of Petition. Id. at 4. The petitioner summarizes:
After filing' previous grievances on Jean Day, the arbitrary and capricious behavior continued to treat me unfair. I knowr I am not doing this legal response correct [sic ], and I conclude I did not deserve termination. No mediation to work at improving a healthy work environment, which I am and was always willing to do. When are Ho-Chunk Tribal members going to stop treating each other in this unprofessional manner]?]
My relief sought still stands at all loss [sic ] wages to date, $10,000. [00] +, expunge from my personnel file.

Id.

The Court acknowledges the obvious difficulty the petitioner encountered in drafting legal documents, but the Court must insist that a petitioner, at an absolute mini *266 mum, identify a perceived administrative error. The Supreme Court requires nothing less when performing its appellate role. See supra note 2. The Court also expects that a petitioner limits his or her cause of action to a review of the underlying administrative adjudicatory decision, and not some hypothetical or entirely separate grievance.[4] The applicable law to these disputes requires no less. ERA, § 5.35c, e; see also HCN R. Civ. P. 63(A-B).
Within the Decision, the Supreme Court recognizes that “Ms. White did not appeal the GRB Decision to the Trial Court. Rather, Ms. White clearly requested review only of her termination, as the Trial Court itself found.” Decision at 3. The Supreme Court, however, disagrees with this Court’s decision “to affirm the GRB Decision, which was not brought before it.” Id. at 4. The Supreme Court concludes that “[e]ven if the GRB Decision had been brought to the Trial Court for administrative review, the Trial Court, still would have erred in affirming it, because the Court failed to review the GRB Decision under the appropriate standard of review.” Id. (citing ERA, § 5.35e; HCN R. Civ. P. 63(I)(1)).
On March 9, 2007, this Court entered final rulings in its first administrative appeals under the recently adopted procedural structure. Willard Lone Tree v. Larry Garvin, in his official capacity as Executive Dir. of HCN Heritage Pres., CV 06-74, 7 Am. Tribal Law 71, 2007 WL 5256873 (HCN Tr. Ct.2007); Janet Fun-' maker v. Libby Fairchild, in her capacity as Executive Dir. of HCN Dep’t of Pers., CV 06-61 (HCN Tr. Ct, Mar. 9, 2007). The present cause of action seemed to represent only the fifth administrative appeal of a GRB adjudicatory decision. Every other appeal related directly to a final administrative adjudicatory opinion, which the petitioners attached to their respective initial pleadings. See HCN R. Civ. P. 63(B). The Court was confronted with a peculiar circumstance in the case at bar. The petitioner attached the GRB Decision with the apparent intent of demonstrating agency error, but then proceeded to seek judicial review of a different cause of action. The Court perceived an absolute failure to fulfill the burden to prosecute,[5] *267 but, whereas a typical civil case would generate a dispositive motion, the appellate briefing schedule does not contemplate a motion process. As a consequence, the Court affirmed the underlying decision without further comment. The Court shall now look to Supreme Court case law for guidance in addressing this and future similar cases.
The Court deems that it must simply deny review of the GRB Decision. The Supreme Court certainly cannot expect this Court to perform deferential review of an administrative adjudicatory decision when a petitioner fails to state the basis for the appeal within the initial pleading and subsequent brief(s). This requirement was modeled specifically upon the parallel appellate rule, which requires the appellant to “file a short statement of the reason or grounds for the appeal.” HCN R.App. P. 11(b). The relevant civil rule directs the petitioner to make “a concise statement of the basis for review, i.e., reason or grounds for appeal.” HCN R. Civ. P. 63(B). A petitioner cannot merely attach a final administrative decision and refrain from essentially doing anything more. Otherwise, the pleading and briefing components become completely useless despite constituting the entire case in an administrative appeal. See HCN R. Civ. P. 63(B), (E).
The Court acknowledges that denying review represents a harsh result, but the Supreme Court has routinely employed this device throughout its history. As reflected above, the Supreme Court commonly denies a Notice of Appeal if the appellant fails to articulate a legal basis for the appeal.[6] Supra note 2. This substantive ground for denial finds its justification within the constitutional division of authority amongst the two (2) courts. Const., Art. VII, §§ 6(a), 7(a). The Supreme Court also has denied Notice(s) of Appeal for failure to adhere to strictly procedural requirements, e.g., untimely filing,[7] ab *268 sence of filing fee,[8] and deficient service of process.[9] As a result, this Court is relatively confident that its chosen manner o dealing with administrative appeals that lack an articulated legal basis will withstand possible appellate scrutiny.[10]
To reiterate, the petitioner brought suit upon the GRB Decision, which she attached to her Petition. The petitioner, however, completely failed to state within the initial pleading or any subsequent filing the basis for the administrative appeal, i,e., the “reason or grounds for appeal.” HCN R. Civ. P. 63(B). The Court accordingly denies the petitioner’s appeal inasmuch as it ever concerned the administrative grievance relating to discrimination and harassment.
II. Does an ancillary discussion of the petitioner’s separation from employment at the GRB hearing serve to consolidate two (2) separate incidents without a formal undertaking of any kind?
The Supreme Court inquired in a footnote whether the GRB may have possibly expanded its administrative inquiry to in-, corporate the petitioner’s separation from employment. Due to the absence of a transcript, the Supreme Court found “it ... difficult to assume that the issue of Ms. White’s termination was not discussed at the GRB hearing.” Decision at 5 n. 4. Without relating the potential significance of any such discussion, the Court observed *269 that “[cjlearly, Ms White is under the impression that she grieved her termination before the GRB.” Id. Consequently, the Supreme Court directed the Trial Court to more closely examine its conclusion that Ms. White failed to exhaust her administrative remedies in conjunction with her alleged termination. Id.
To begin, the Court does not believe that ancillary discussion of an issue before an administrative agency constitutes an adjudication of a separately grievable matter. Moreover, a grievant’s belief to the contrary should possess no legal import if detached from any affirmative steps to consolidate two (2) more separate causes of action. Nonetheless, the following exchanges occurred at the May 15, 2007 GRB hearing.
1) The petitioner conjectured: “Well, I have a question, and, that is: When did I become this horrible employee that deserved termination?” GRB Hr’g R. 003-07-D/H (CD 1, 25:40). The petitioner posed this rhetorical question in isolation, and represents the only mention of the alleged termination by the petitioner within her initial presentation.
2) GRB Chair Rick McArthur prefaced the supervisor’s presentation with an instruction. “You’ve heard what Gayle’s side of the case is. Now is your time to present that she was terminated not for harassment or discrimination; she’s alleging harassment and discrimination.” Id. (CD 2, 12:46). Apart from the above quote, the GRB had not previously entertained the issue of an alleged termination.
3) A female GRB member later inquired: “So, when did you receive ... her leave paper?” Id. (CD 3, 04:48). Respondent Day answered as follows: “She didn’t even come to talk to me about it, at all.... And, so, that’s why, eventually, it came to ... termination hecause of no-call, no showing up for work [inaudible] and abandonment of employment.” Id. (CD 3, 5:45).
4) Two (2) GRB members, including GRB Supervisor Jeff Barrix, subsequently inquired about the petitioner’s request for Unpaid Leave of Absence and the apparent failure of the petitioner to secure a required approval of the request. Id. (CD 3, 14:40). This inquiry culminated in the following exchange:
GRB Supervisor Barrix: “So at that time you just decided to go on leave?”
Pet’r: “Yes.”
Barrix: Without it being resolved?
Pet’r “Yeah.”
Id. (CD 3, 18:56).
5) GRB Chair McArthur concluded the hearing by asking the petitioner to “summarize everything and make the points that [she] th[ought would] show that there was harassment or discrimination?” Id. (CD 3, 19:20). Concerning the alleged termination in particular, the petitioner conceded: “Yes, I did abandon my job, but there wTere a lot of circumstances that brought it to that.” Id. (CD 3, 25:53).
6) Respondent Day summarized the testimony concerning the alleged termination in the following manner: “I guess the biggest point I do have right now is Gayle did admit that she abandoned her job. She did not come in for three consecutive days, which is in the ERA, wrhich is job abandonment, which ... you do not need progressive discipline on that.” Id. (CD 3, 38:03).
The GRB, therefore, clearly did discuss the petitioner’s separation from employment, but only in the context of the pending discrimination and harassment grievance. The petitioner seemingly viewed the failure to approve the Unpaid Leave of *270 Absence request as a final instance of discrimination or harassment, but, as stated above, the GRB ultimately found no merit in the petitioner’s allegations of discrimination and harassment. The GRB clearly did not discuss the actual abandonment or the consequences of the job abandonment. The petitioner did not allege an absence of procedural due process at or prior to the GRB hearing, and the GRB conducted no examination of the procedures employed by the respondent in processing the separation from employment. As a result, the GRB Decision does not reference the petitioner’s alleged termination in any way, shape or form.[11]
The GRB could have entirely refrained from mentioning the alleged termination, and restrained parties from making related comments. Nonetheless, these slight deviations do not detract from the obvious scope of the administrative hearing, especially in light of the content of the January 8, 2007 HCN Grievance Form, which alleges only discrimination or harassment. The Supreme Court noted that the “Administrative Record contains documents relating to [the] termination,” but, as revealed in the GRB hearing, the respondent provided all exhibits. GRB Hr’g R. 003-07-D/H (CD 1, 27:52). The petitioner presented no documentation relating to her alleged termination within her discrimination and harassment case. See ERA, § 5.34e(1-2).
Yet, the Court does lack certain information that does not appear within the administrative record, and directs the GRB to provide thorough responses to the below questions. The Court declines to simply supplement the evidentiary record as though it sat as the original finder of fact. The Court provides the reasoning for this declination within the next section.
1) Did the petitioner subsequently file an HCN Grievance Form regarding her separation from employment? If so, what resulted from this filing?
2) Did the petitioner formally request in writing to consolidate a claim of an alleged termination with the discrimination/harassment case prior to the May 15, 2007 GRB hearing?
3) Did the petitioner verbally request to consolidate a claim of an alleged termination with the discrimination/harassment case prior to the May 15, 2007 GRB hearing?
4) Did administrative personnel within the Personnel Department inform the petitioner, in writing or otherwise, that the GRB would address her alleged termination at its May 15, 2007 hearing?
5) Did administrative personnel within the Personnel Department inform the petitioner, in writing or otherwise, that the pending status of her diserimination/harassment case rendered unnecessary the filing of a separate HCN Grievance Form regarding her separation from employment?
III. Does the Court maintain authority to ascertain facts not previously found by the GRB within its quasi-adjudicatory role?
The Supreme Court began the substantive component of its opinion with a recitation of its adopted standards of review, which it presumably intended to use when weighing the several issues posed upon appeal. The Supreme Court first notes that it “reviews questions of law ... *271 de novo.” Decision at 3 (citing Robert A. Mudd v. HCN Legislature, SU 03-02 (HCN S.Ct., Apr. 8, 2003); Louella Kelty v. Jonette Pettibone et al., SU 99-02 (HCN S.Ct., Sept. 24, 1999)).[12] The Court next asserts that “[a]ny discretionary judgments of the Trial Court or questions of fact will be reviewed under the ‘abuse of discretion’ standard.”[13] Id. (citing Smith, *272 SU 03-08; Rae Anna Garcia v. Joan Greendeer-Lee et al., SU 03-01 (HCN S.Ct., May 2, 2003); Anna Rae Funmaker v. Kathryn Doornbos, SU 96-12 (HCN S.Ct., Mar. 25, 1997)). While the Court respectfully objects to the current standard of review applied to findings of fact, supra note 12, it insists that no deferential standard of review should apply within the present context. Quite simply, the Court did not independently find facts when conducting the administrative appeal. Order (Affirming), CV 07-54 (HCN Tr. Ct., Jan. 14, 2008) at 7 n. 3.
Admittedly, the Court did deduce that “(tjhe petitioner never independently grieved her alleged termination before the GRB,” but this finding merely reflects an obvious truth within the administrative record. Id., at 9. The petitioner sought review of an administrative decision, which, on its face, has nothing to do with a separation from employment. Within the instant case, the petitioner, at best, may have concurrently, but not independently, grieved the alleged termination, and the GRB shall resolve this issue upon remand. The Court contends that the above assertion is no more a finding of fact than the Supreme Court’s observation that “Ms, White clearly requested review only of her termination.” Decision at 3; see also Const., Aet. VII, § 7(a).
Consequently, the Supreme Court should generally subject a Trial Court judgment rendered in an administrative appeal to plenary review. The Seventh Circuit Court of Appeals expressed the rationale for supporting de novo review as follows:
*273 This court owes no deference to the district court’s factual findings because the district judge made none. The fact finder in this case is the Secretary ..., and both the district court and this court owe the Secretary’s findings deference. In that respect both courts apply the same standard of review. See generally Johnson v. Heckler, 741 F.2d 948, 953 (7th Cir.1984). This court therefore reviews the district court’s determinations de novo as questions of law.
Daviess County Hosp. v. Bowen, 811 F.2d 338, 342-43 (7th Cir.1987). In this case, the factfinder is the GRB, and the Court, therefore, must direct the agency to address certain outstanding issues identified by the Supreme Court. See ERA, § 5.34e, f(4)(b), g(3—5, 7).
The Ho-Chunk Nation Legislature possesses the constitutional authority to promulgate laws, including those pertaining to employment. Const., Art. V, § 2(a, f). More importantly, the Legislature can delegate its powers to an executive administrative agency.[14] Id., Arts. V, § 2(b), VI, § 1(b). The Court must respect the spheres of authority occupied by the coequal branches of government.[15] Id., Arts, III, § 3, IV, § 2. The Court accordingly directs the GRB to deduce facts relating to the level of procedural protection afforded to the petitioner in connection with her separation from employment. The GRB may permissibly find such facts provided that the Court does not relinquish its authority to “determine the sufficiency of the procedural protections offered by the employer.”[16] Willard LoneTree v. Larry *274 Garvin, in his official capacity as Executive Dir. of HCN Heritage Pres., CV 06-74 (HCN Tr. Ct., Mar. 9, 2007) at 16, aff'd, SU 07-04 (HCN S.Ct., Oct. 8, 2007). In this regard, the GRB shall provide thorough responses to the below questions.
1) Did the petitioner receive a copy of the ERA contemporaneous with its enactment on December 9, 2004, or shortly thereafter?
2) Did the petitioner recognize that she needed to secure approval by the Department of Personnel pursuant to ERA, § 5.27, prior to taking an Unpaid Leave of Absence? If so, did the petitioner believe that the Department of Personnel approved her October 10, 2007 HCN Leave Application?
3) Did supervisory personnel, including respondent Day, inform the petitioner pri- or to her purportedly taking an Unpaid Leave of Absence that the Department of Personnel had not approved the request?
4) Did the petitioner maintain her current address on file with the Department of Personnel by providing timely and necessary Status Change Formfs) ?
5) Did the petitioner remain “absent from ... her assigned work location without authorized leave for three (3) consecutive days” as stated in ERA, § 5.29e?
6) Did respondent Day or another supervisory employee attempt to contact the petitioner prior to processing the October 17, 2007 HCN Disciplinary Action Form,? If so, and it successful, what transpired in the resulting conversation?
7)Did respondent Day or another supervisory employee provide the petitioner with notice and an opportunity to be heard prior to her separation from employment? If not, why?
The Court requests that the GRB inform it of the timeframe in which it can accomplish adherence with this judgment. The GRB shall file such notice within fifteen (15) days of the issuance of this decision. The Court hopes that neither the appellate tribunal nor the parties perceive any obstinacy or disrespect within this decision. The breadth and depth of the opinion should illustrate the Court’s legitimate concerns with the issues involved herein.
The Court also hopes that this decision serves to emphasize the importance of confronting and resolving legal issues in a consistent and well-reasoned manner. When invoked, the Court has even-handedly applied the defense of failing to exhaust administrative remedies. The Decision now casts this practice in doubt.

. GRB decisions are undoubtedly based upon underlying employment concerns, i.e., termination, suspension, discrimination or harassment, but the Court intended that the peti *263 tioner rather indicate the basis for the appeal, which would comport with the prevailing law and applicable procedural rules. Employment Relations Act of 2004 (hereinafter ERA), 6 HOC § 5.33a, 34a(/), 35(c, e); Ho-Chunk Nation Rules of Civil Procedure, Rule 63(B), (I)(/). The Court shall supplement its Petition to more dearly convey this necessity.

. The Supreme Court does not permit such latitude within its approach to accepting appeals. To begin, the Supreme Court has not created a boilerplate Notice of Appeal, and, therefore, all appellants, represented and pro se alike, must draft the document, which must include a "short statement of the reason or grounds for the appeal ..., includ[ing] complete procedural and factual summary of the proceedings below.” Ho-Chunk Nation Rules of Appellate Procedure (hereinafter HCN R.App. P.), Rule 11(b). Consequently, numerous appellants have fallen victim to the Supreme Court's sometimes strict adherence to its pleading requirement. Marjerette M. Jadack v. Guy R. Detlefsen, SU 08-03 (HCN *264 S.Ct., Aug. 25, 2008) (denying appeal for failure of pro se non-member appellant to detail basis of appeal within Notice of Appeal); Nicholas J. Kedrowski v. Sharon Whitebear et al., SU 05-12, 6 Am. Tribal Law 170, 2006 WL 5820606 (HCN S.Ct.2006) (same as Jadack); Kenneth L. Twin v. Douglas Green-grass et al, SU 04-08 (HCN S.Ct., Dee. 29, 2004) at 3 (denying appeal for failure of represented member appellant to allege an error of the fact-finder “with any meaningful specificity'' within Notice of Appeal); Maria L. Adamiuk v. Ho-Chunk Casino, SU 04-05 (HCN S.Ct., Sept. 24, 2004) (same as Ja-dack ); Joseph E. Decorah v. Ho-Chunk Nation et al, SU 03-05 (HCN S.Ct., June 27, 2003) (denying appeal for failure of pro se member appellant to allege an error of the fact-finder within Notice of Appeal); In the Interest of Minor Child: P.S., DOB 04/10/87, by Pearl Lightstorming v. HCN Office of Tribal Enrollment, SU 02-07 (HCN S.Ct., Dec. 20, 2002) at 3 (denying appeal for failure of pro se member appellant to detail basis of appeal within Notice of Appeal, which the Court surmises in an independent inquiry' after affording appellant the opportunity to correct procedural appellate defects); Gloria J. Visitin v. Douglas Long, as Pres, of Gen. Council, SU 02-04 (HCN S.Ct., Aug. 16, 2002) (denying appeal for failure of pro se member appellant to detail basis of appeal within Notice of Appeal ); Judith McLendon v. Ho-Chunk Nation et ah, SU 02-03 (HCN S.Ct., July 17, 2002) (same as Jadack ); Karen Raines v. Ho-Chunk Nation, SU 01-07 (HCN S.Ct., July 25, 2001) (same as Jadack); Deetia M. Basina v. Wi7-liam P, Smith, SU 00-08 (HCN S.Ct., July 13, 2000) (same as Visitin )', Cheryl Smith v. Ho-Chunk Nation el at., SU 00-07 (HCN S.Ct., May 26, 2000) (denying appeal for failure of represented tribal entity appellant to detail basis of appeal within Notice of Appeal); HCN Dep’t of Educ. v. Joanne LaMere et ah, SU 99-11 (denying appeal for failure of pro se member appellant to supplement articulated basis of appeal within ten (10) days after Clerk of Court alerted appellant to the deficiency); Rachel Winneshiek et al. v. John C. Houghton, Jr., SU 99-66 (HCN S.Ct., Sept. 28, 1999) (denying appeal for failure of pro se member appellant to supplement articulated basis of appeal within ten (10) days after Court alerted appellant to the deficiency); Briar, Hobart v. Majestic Pines Casino, SU 97-02 (HCN S.Ct., May 28, 1997) (denying appeal for failure of pro se non-member appellant to detail basis of appeal within Notice of Appeal despite being “afforded ample time to perfect his appeal request to conform with the Ho-Chunk Nation Rules of Appellate Procedure’’); Clifford Riddle v. Ho-Chunk Nation et al, SI 95-03 (HCN S.Ct., Nov. 1, 1995) (same as Jadack ). Curiously, the Supreme Court recently allowed a represented nonmember appellant three (3) separate attempts to supplement his basis for appeal before accepting the matter. Thomas Quimby v. Ho-Chunk Nation el ah, 7 Am. Tribal Law 82, 2008 WL 2486310 (HCN S.Ct.2008). The appellant indicated in his initial attempt that the Trial Court’s opinion was simply "incorrect.” Notice of Appeal, SU 07-08 (Apr. 23, 2007) at 2. The Supreme Court consequently denied the appeal after affording the appellant no notice of his deficiency. Order Denying Appeal, SU 07-08 (HCN S.Ct., May 9, 2007). The appellant then proceeded to file two (2) amended Notice(s) of Appeal before satisfying the appellate tribunal. Scheduling Order, SU 07-08 (HCN S.Ct., Dec. 4, 2007).

. The ERA does not permit discrimination to be perpetrated against an employee, in most instances, on the basis of an immutable characteristic, ERA, § 5.5a, and prohibits acts of harassment that "ereat[ej an unreasonably intimidating, hostile, and objectively offensive working environment.” Id., § 5.6d(/).

. The Supreme Court previously rejected an appellant’s attempt to consolidate two (2) appeals because one cause of action remained within the Trial Court. The Court explained its decision as follows: “Although the HCN Supreme Court would have original jurisdiction as the appellate court in both matters this Court will not exercise jurisdiction in CV 01-25 until a final judgment has been entered and the matter is ripe for appeal.” Aleksandra Cichowski v. Four Winds Ins. Agency, LLC, SU 04-01 (HCN S.Ct., Aug. 20, 2004) at 2. This Court agrees with the Supreme Court's resolution of the matter, but respectfully disagrees with the Court's ripeness designation. The appellant's asserted cause of action became ripe on February 19, 2001, when terminated from employment, three and a half (3) years prior to the appellate decision. Aleksandra Cichowski v. Ho-Chunk Hotel & Convention Ctr;. CV 01-25 (HCN Tr. Ct., May 30, 2006) at 9. "Finality, not ripeness, is the doctrine governing appeals from district court to court of appeals.” United States v. Jose, 519 U.S. 54, 57, 117 S.Ct 463, 136 L.Ed.2d 364 (1996) (emphasis added). More broadly, "the exhaustion requirement generally refers to administrative and judicial procedures by which an injured party may seek review of an adverse decision and obtain a remedy if the decision is found to be unlawful or otherwise inappropriate.” Williamson County Reg’l Planning Comm’n v. Hamilton Bank of Johnson City, 473 U.S. 172, 193, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985). Ironically, the latter Cichowski decision rested upon a failure to exhaust administrative remedies.

. See, e.g., Joshua F. Smith, Sr. v. Adam Estes et al., CV 03-08 (HCN Tr. Ct., Dec. 18, 2003) at 13; Leigh Stephen et al. v. Ho-Chunk Nation, CV 97-141 (HCN Tr. Ct, Oct 26, 1998) at 5; Edward Frank v. Ho-Chunk Tours, CV 96-11 (HCN Tr. Ct, June 19, 1996) at 1.

. The Court can discern no reason why some appellants are afforded additional time to supplement their Notice(s) of Appeal whereas others are subjected to summary dismissal. See Quimby, SU 07-08; LaMere, SU 99-11 Winneshiek, SU 99-66; Hobart, SU 97-02. Likewise, the Court cannot speculate why only a single appellant, Rachel Winneshiek, during the history of the Judiciary was deserving of specific instruction to modify her Notice of Appeal in the form of a judicial order. Winneshiek, SU 99-06 (HCN S.Ct., Sept. 10, 1999) (providing ten (10) days to supplement basis of appeal).

. The Supreme Court created the appellate timeframe pursuant to its authority to promulgate procedural rules for the Judicial Branch. Const., Art. VII, § 7(b); see also HCN R.App. P. 11(a). As such, the timeliness of an appellate filing does not readily have a substantive underpinning. In contrast, Trial Court filing deadlines reflect statute of limitations considerations. See Statute of Limitations & Commencement of Claims act, 2 HCC § 14.4e; see also generally Kenneth L. Twin v. Douglas Greengrass, Executive Dir. of Admin., CV 03-88 (HCN Tr. Ct., Oct. 7.2004) at 6-9. In employment matters, timeliness of filing also determines whether a petitioner can avail him of herself of the limited waiver of sovereign immunity. See ERA, § 5.35a, c; see also Const., Art. XII, § 1. Despite its procedural foundation, the Supreme Court has strictly enforced the appellate filing deadline. Veronica L. Wilber v. Ho-Chunk Nation, SU 04-02 (HCN S.Ct., Apr. 14, 2004) (denying appeal since pro se member appellant filed Notice of Appeal one (1) day late, and, in any event, failed to detail basis of appeal); HCN Hous. Auth. v. Tyrone Swallow et al., SU 01-16 (HCN S.Ct., Dec. 19, 2001) (denying appeal since pro se member appellant filed Notice of Appeal eight (8) days late); Marie WhiteEagle v. Wis. Dells Head Start et al., SU 01-14 (HCN S.Ct., Nov. 27, 2001) (denying appeal since represented member appellant filed Notice of Appeal one (1) day late); HCN Legislature v. HCN Gen. Council et al., SU 01-09 (HCN S.Ct., Aug. 22, 2001) (denying appeal since represented tribal entity appellant filed Notice of Appeal one (1) day late); HCN Dep't of Hous., Prop. Mgmt. Div. v. Charles C. Brown et *268 al., SU 00-11 (HCN S.Ct., Aug. 18, 2000) (denying appeal since pro se member appellant filed Notice of Appeal eleven (11) days late).

. The Supreme Court has announced a fee structure for the Judiciary pursuant to its authority to issue written rules for the court system. Const., Art. VII, § 7(b); see also HCN R.App. P. 9(a). The Court has insisted upon the inclusion of the filing fee with the Notice of Appeal. Leigh Stephen et al. v. Ho-Chunk Nation, SU 99-01 (HCN S.Ct, Mar. 23, 1999) (denying appeal for failure of represented non-member appellant to submit timely filing fee, which could not be rectified by subsequent payment after informed of deficiency).

. The Supreme Court has constructed appellate service of process requirements pursuant to its authority to promulgate procedural rules for the Judicial Branch. Const., Art. VII, § 7(b); see also HCN R.App. P. 11(c), The Court has consistently rejected timely filed Notice(s) of Appeal upon the grounds that the appellant merely failed to serve the named appellee(s) with a copy of the same. Wisconsin v. Henry White Thunder, SU 01-05 (HCN S.Ct,, Dec. 8, 2001) (denying appeal for failure of pro se member appellant to provide documentation of proper service of process after alerted to the deficiency); Nina Garvin v. Carol Laustrup et al., SU 99-04 (HCN S, Ct, July 7, 1999); (denying appeal for failure of pro se member appellant to perform timely service of process, which could not be rectified by subsequent service after informed of deficiency).

. A Trial Court litigant possesses a constitutional right to "appeal to the Supreme Court,” Const,, Art. VII, § 14 as compared to an opportunity to file an initial case or controversy "in Trial Court before .. . any other court.” Id., § 5(a). An individual cannot possess a right to file a cause of action with the Trial Court since a plaintiff/petitioner must first allege, at a minimum, the presence of subject matter jurisdiction. Id.; see also Julie Schultz v. Robert Fumnaker et al,, CV 08-26 (HCN Tr. Cl., Nov. 19, 2008) at 9 n. 5. The Constitution, therefore, pronounces a priority as it relates to civil filings and expresses a right as it relates to appellate filings. Yet, although an unsuccessful litigant maintains a right to appeal his or her case, the Supreme Court has stated that ‘‘[ajppeals are not automatically a matter of right but are within the Court's discretion. The HCN R.App. P. provide the guidelines as to how parties file an appeal.” Wilbur, SU 04-02 at 2. Consequently, the Trial Court must be capable of similarly denying an administrative appeal due to a petitioner’s failure to adhere to procedural requisites. As explained by the appellate justices: “This Court, despite its infancy, must require those who come into our court system to follow our rules and requirements.” Stephen, SU 99-01 at 3.

. To eliminate future misunderstandings, the GRB should explicitly limit its administrative inquiry to those facts and circumstances necessary to rendering an opinion on the actual grievance(s) properly submitted before it, and also instruct parties to limit presentations to relevant evidentiary matters. See ERA, § 5.34g(4-5).

. In Mudd, the Supreme Court similarly indicates that "[ojn questions of law ... [it] applies the de novo standard of review,” citing the Kelty decision as authority for this statement. Mudd, SU 03-02 at 4. In Kelty, how'ever, the Court makes no mention of the de novo standard, but instead responds to the appellee's motion for reconsideration, which she presumably filed, in part, due to the absence of any articulated standard of review within the underlying appellate decision. See Kelty, SU 99-02 (HCN S.Ct., July 27, 1999); see also Hope B. Smith v. Ho-Chunk Nation, SU 03-03 (HCN S.Ct., Dec. 8, 2003) at 5 n. 3(clarifying that Kelty “did not articulate this standard but instead resolved a question on how' whether to grant a Motion to Reconsider ”). The Kelty Court chastises the appellee for presenting a "Motion [that] advances that the Supreme Court ‘can only reverse for abuse of discretion or a clear error’ but does not provide any legal basis for that statement.” Kelty, SU 99-02 (HCN S.Ct., Sept. 24, 1999) at 2. The Court then responds to the appellee's contention as follows: "This Court is not bound by federal or state laws as to standards of review. If counsel was referring to standards set by this Court, it w'ould have been helpful to have been provided authority for the proposition.” Id. The Supreme Court does not set forth why such an explanation was necessary given that it had applied no other standards of appellate review within its then brief four (4) year history. In fact, the Supreme Court continued to use an abuse of discretion standard for reviewing questions of law until the sudden unexplained, albeit correct, reversal in Mudd. See, e.g., Daniel Young-thunder, Sr. v. Jonette Pettibone et al., SU 00-05 (HCN S.Ct., July 28, 2000) at 2 (“The Appellees have correctly stated that this Court must review the Trial Court Judgment with an abuse of discretion standard. That is, this Court must review the Trial Courts [sic] decision to determine if an error of law was made by the lower court.”).

. As noted above, the Supreme Court "is not bound by federal or state laws as to standards of review." Kelty, SU 99-02 at 2. Nevertheless, the Court has chosen to incorporate the three (3) commonly recognized appellate standards within its decisions at various points. "For purposes of standard of review, decisions by judges are traditionally divided into three categories, denominated questions of law (reviewable de novo ), questions of fact (reviewable for clear error), and matters of discretion (reviewable for 'abuse of discretion').” Pierce v. Underwood, 487 U.S. 552, 558, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988). Regrettably, the adopted standards do not always correspond with their commonly associated legal contexts within tribal appellate case law. For instance, the Supreme Court continues to scrutinize findings of fact by employing an abuse of discretion standard. The Court sanctioned this particular usage in the following manner: "In other jurisdictions, a review by an appellate court of a trial court's findings of fact is made under an abuse of discretion standard. That is, was the finding of the trial judge as to a certain fact so untenable that the trial judge abused his or her discretion.” Funmaker, SU 96-12 at 2. The Supreme Court cites no external authority for this supposition, quite possibly because none is readily available. In Wisconsin, for example, the appellate courts examine findings of fact under a clearly erroneous standard of reviews Steinbach v. Green Lake Sanitary Dist., 291 Wis.2d 11, 715 N.W.2d 195, 209 (2006).
The Supreme Court later offered a definition of "abuse of discretion,” i.e., "any unreasonable, unconscionable and arbitrary action taken without proper consideration of facts and law pertaining to the matter submitted.” Youngthunder, Sr., SU 00-05 at 2 (quoting Black’s Law Dictionary 11 (6th ed. 1990)). Black’s Law Dictionary lifted this definition from an Oklahoma Court of Criminal Appeals decision in which the court appropriately examined a matter committed to the discretion of the trial judge, namely ' "[t]he granting and denying of permission to withdraw a plea of guilty and substitute a plea of not guilty.’ ” Harvey v. State, 458 P.2d 336, 338 (Okla.Crim.App.1969) (citation omitted). State of Oklahoma appellate courts, incidentally, also examine findings of fact under a clearly erroneous standard of review. Franks v. Tyler, 531 P.2d 1067, 1069 (Okla.Ct.App.1974) (citing *272 Bd. of County Comm’rs of Tulsa County v. Lloyd, 322 P.2d 406, 407 (Okla. 1958)).
Adding to the confusion, the Supreme Court has previously stated the appropriate standard for reviewing findings of fact. See, e.g., Coalition for a Fair Gov’t v. Chloris A. Lowe, Jr. et al., SU 96-02 (HCN Tr. Ct., July 1, 2006) at 8 (observing that “[t]he appellants have not demonstrated clear error with respect to the factual findings”). The most recent expression of this standard of review appeared in a 2002 concurrence. Lightstorm-ing, SU 02-07 at 5 (Butterfield, J., concurring). In Lowe, the Supreme Court principally examined the Trial Court’s entrance of a preliminary injunction under an abuse of discretion standard. The Court reasoned that "this is not a review of the merits of any of the parties [sic ] claims, since they have not had the opportunity to be fully presented to the trial court.” Id. at 7. In this regard, the analysis of the Lowe Court coincided with that of the United States Supreme Court. See George Lewis v. HCN Election Bd. et al, CV 06-109 (HCN Tr. Ct., Dec. 5, 2006) at 16, rev’d, SU 06-07 (HCN S.Ct., Mar. 6, 2007) (citing Brown v. Chote, 411 U.S. 452, 457, 93 S.Ct. 1732, 36 L.Ed.2d 420 (1973)). The Supreme Court later reversed its position without explanation, selecting instead to subject the granting of a preliminary injunction to de novo review. Lewis, SU 06-07 at 3.
A preliminary injunction is an example of equitable relief, and is, by definition, committed to the discretion of the court. See Const., Art, VII, § 6(a); see also generally Ronald K. Kirkwood v. Francis Decorah, in his official capacity as Dir. of HCN Hons. Dep't, et ah, CV 04-33, 6 Am. Tribal Law 188, 198-200, 2005 WL 6161103, *9-11 (HCN Tr. Ct.2005) (analyzing the historical distinction between actions at law and equity). An appellate court typically analyzes relief afforded by a trial court acting as a court in equity or pursuant to a discretionary conferral under an abuse of discretion standard. The Supreme Court presently seems to partially acknowledge the theoretical underpinning of this standard of review despite its refusal to consistently utilize this highly deferential approach. Decision at 3. As a final note, in, Wisconsin, the judiciary has modified the traditional terminology while retaining the substance of this standard "We use the phrase erroneous exercise of discretion in place of abuse of discretion, a phrase which we have used in numerous prior cases to describe a circuit court's error in reaching a decision involving discretion .... We have come to believe that the term abuse of discretion carries unjustified negative connotations." Brookfield v. Milwaukee Metro. Sewerage Dist., 171 Wis.2d 400, 491 N.W.2d 484, 493 (1992).

. In this respect, as well as others, the Ho-Chunk governmental structure differs from its federal counterpart. The United States Congress, for example, cannot constitutionally delegate its legislative powers to the Executive Branch. " ‘The ... distinction ... is between the delegation of power to make the law, which necessarily involves a discretion as to what it shall be, and conferring an authority or discretion as to its execution, to be exercised under and in pursuance of the law.' ” J.W. Hampton, Jr. & Co. v. United States, 276 U.S. 394, 407, 48 S.Ct. 348, 72 L.Ed. 624 (1928) (citation omitted); see also Whitman v. Am. Trucking Associations, 531 U.S. 457, 473-75, 121 S.Ct. 903, 149 L.Ed.2d 1 (2001). No federal constitutional provision allows a direct legislative delegation.

. The Supreme Court apparently objects to this Court’s perceived elevation of a prudential consideration, i.e., exhaustion of administrative remedies, above a potential constitutional deprivation. Specifically, "[¡]f Ms. White's due process rights were violated, then her failure to exhaust administrative remedies would be irrelevant.” Decision at 7; see also Const., Art. X, § 1(a)(8). The exhaustion requirement, however, is not merely a prudential rule of the Court, but finds its basis in the constitutional principle of separation of powers. Const., Art. III, § 3. Moreover, the Supreme Court has not similarly loosened or abandoned appellate procedural requirements in view of the constitutional, or statutory, nature of interests at stake upon appeal. See supra notes 2, 7-9.

. The Court previously observed that: the due process clause does not, in and of itself, create property interests, but rather statutory law must create the contours of individual property rights. Joyce L. Warner v. Ho-Chunk Nation et al., CV 04-72 (HCN Tr. Ct., Sept. 11, 2006) at 15-16 (citing Bd. of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)) rev’d on other grounds, SU 06-05 (HCN S.Ct., June 19, 2007). The ERA "is the official employment law of the Ho-Chunk Nation,” ERA, § 5.3a, and, consequently, the ERA defines the terms under which an employee maintains employment. Each prospective employee accepts tribal employment with this understanding. The ERA enumerates instances of unacceptable conduct for which an employee may receive disciplinary action, including termination. E.g., id., § 5.30e(1-2). An employee, however, must receive pre-deprivation minimal procedural due process protection before the employer may terminate based upon its discretionary assessment of the facts and circumstances. Id., § 5.31a(2). No such protection should attach to an instance where an employee is *274 not deprived of a property interest by the employer, but instead relinquishes the property interest to the employer. The Court asserts that such an instance occurs when an employee abandons employment. id., § 5.29e. Again, each employee accepts employment upon the terms and conditions that the Ho-Chunk Nation Legislature establishes within the ERA pursuant to its constitutional authority. Const., Art. V, § 2(f). The Court deems that a dear distinction exists, but the Supreme Court does not join in this assessment. Any further arguments in this regard must be presented to the Supreme Court.